## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 41497

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 15** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 30, 2015** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **GERALD K. UMPHENOUR,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. Michael J. Griffin, District Judge.

Judgment of conviction for possession of methamphetamine, <u>vacated</u>, and <u>case remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Gerald K. Umphenour appeals from his conviction for possession of methamphetamine, contending that the district court committed fundamental, structural error by conducting a court trial without first obtaining Umphenour's personal waiver of his constitutional right to a jury trial. We vacate the conviction.

### I.

### BACKGROUND

Umphenour was charged with felony possession of methamphetamine, misdemeanor resisting and obstructing an officer, and misdemeanor possession of an open container of alcohol. At a February 19, 2013 pretrial hearing, the parties informed the district court of a plea agreement calling for Umphenour to plead guilty to the felony possession charge and for the

1

State to dismiss the two misdemeanor charges. During the plea colloquy, however, the district court apparently was unsatisfied with Umphenour's responses to its questions and the court declined to accept the guilty plea. Trial was rescheduled for May 22, 2013.

On the morning of May 22, the parties informed the court that they had reached another agreement. The following colloquy then occurred:

> THE COURT: Let's go on the record, please. For the record this is File No. CR2012-488. Mr. Umphenour is here in court with Mr. Kovis, his counsel; and Mr. Tyler is representing the State.
>
> Counsel indicated before we came in that you had discussed this case further, and that there was a proposal that the parties stipulate to certain facts, and that the Court make findings based upon those facts. Is that generally what counsel wanted to do?
>
> MR. KOVIS: Yes, Your Honor. I talked with Mr. Umphenour, and I've gone over your proposed jury Instruction No. 2, which had the elements of the possession of a controlled substance elements one, two, three, and four: On or about June 6th; in the State of Idaho; Gerald K. Umphenour possessed any amount of methamphetamine; and four, the defendant either knew it was methamphetamine or believed it was a controlled substance. Mr. Umphenour would stipulate to all of that being true.
>
> THE COURT: Mr. Tyler, is the State also stipulating to those facts?
>
> MR. TYLER: Yes, Your Honor.
>
> THE COURT: Mr. Umphenour, you've had enough time to discuss this with your attorney; is that right?
>
> THE DEFENDANT: Yeah, we talked this morning.
>
> THE COURT: Okay. Well, after talking to him this morning at this time are you stipulating or agreeing that those facts that were just recited by Mr. Kovis are, in fact, true?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay, and has anybody promised you anything, Mr. Umphenour, as far as what would happen if you stipulated to those facts?
>
> THE DEFENDANT: No.
>
> MR. KOVIS: I just want to be clear, I did tell Mr. Umphenour that the two misdemeanor cases would be dismissed. The sentencing would be down the road; that he would not be incarcerated today. It's an open sentencing. We can argue that if he's placed on probation he can apply for unsupervised probation so he can go to North Dakota, or if he's on supervised probation he can ask for an interstate compact, whatever you call it, so that he can go to North Dakota.
>
> THE COURT: Okay. Yeah, and I forgot about the two misdemeanors. It's my understanding those two misdemeanors would be dismissed, and that's your understanding, Mr. Umphenour?
>
> THE DEFENDANT: I thought that one--I thought the one open container was already dismissed.
>
> THE COURT: Well, if it wasn't it's going to be, how is that? I don't know. I would have to go look through the file. But if it's not dismissed it's

2

going to be dismissed.  And then sentencing would not occur today, but obviously you would be free to--you wouldn't be incarcerated.  You would be free to come back at the time of sentencing, and then sentencing would be--after I listen to you and listen to the attorneys I would have to decide what type of sentence would be appropriate in this case.  And so it's my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that's been entered into by both parties?

        MR. KOVIS:  That's correct, Your Honor.

        MR. TYLER: Yes, Your Honor.

        THE COURT: Based on that stipulation the Court does find that on or about the 6th day of June, 2012; in the State of Idaho; Gerald K. Umphenour possessed some amount or any amount of methamphetamine; and that Mr. Umphenour either knew it was methamphetamine or believed it was a controlled substance.  Based upon those stipulated facts and findings, the Court does find that Mr. Umphenour is guilty of the offense in count one, that is, possession of a controlled substance.  Is the State asking that counts two and three be dismissed at the time of sentencing?

        MR. TYLER: Yes, Your Honor, so moved.

The district court thereafter sentenced Umphenour to a unified four-year term of imprisonment, with six months fixed.  Umphenour appeals, contending that the district court violated Article I, § 7 of the Idaho Constitution and the Sixth Amendment to the United States Constitution by conducting a court trial without first obtaining Umphenour's personal waiver of his right to a jury trial.[1]

## II.

## ANALYSIS

Umphenour did not file a motion for a new trial nor otherwise raise the issue of a violation of his right to a jury trial in the district court.  Therefore, in order to obtain relief on appeal, Umphenour must demonstrate fundamental error.  To do so, "(1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not

---

[1]    The State contends that Umphenour is barred from asserting that the district court erred in conducting a court trial on stipulated facts because he invited the error by agreeing to the stipulated facts.  The State's argument misunderstands the issue raised by Umphenour in this appeal--whether the district court's failure to obtain his personal waiver of his right to a jury trial violated his constitutional rights.  While a trial on stipulated facts is an unorthodox procedure that is not expressly authorized by the Idaho Criminal Rules or by statute, in this appeal Umphenour does not challenge the legality or propriety of that procedure.  Therefore, the State's invited error argument is inapposite.

3

contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010) (footnote omitted).

## A.    Clear Violation of a Constitutional Right

The Sixth Amendment to the United States Constitution and Article I, § 7 of the Idaho Constitution both preserve a criminal defendant's right to trial by jury. Unlike the Sixth Amendment, however, Article I, § 7 of the Idaho Constitution also directs *how* that right to a jury trial may be waived. It states:

> The right of trial by jury shall remain inviolate . . . . A trial by jury may be waived in all criminal cases, by the consent of all parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law.

The requirements for a valid waiver of a criminal defendant's right to a jury trial was addressed by a special panel of this Court composed of one Supreme Court justice, one senior Supreme Court justice, and one district judge in *State v. Swan*, 108 Idaho 963, 703 P.2d 727 (Ct. App. 1985). There, the defendant's attorney, on the record in open court at the arraignment and again on the first day of trial, stipulated in the defendant's presence to waive the defendant's jury trial right and consented to a court trial. *Id.* at 964 n.1, 703 P.2d at 728 n.1. The district court thereupon conducted a court trial and found the defendant guilty. The defendant appealed, contending that his personal waiver in open court was required for a valid waiver of his jury trial right and that his attorney could not effectively waive that right on the defendant's behalf. *Id.* at 964, 703 P.2d at 728. This Court agreed that a defendant's personal waiver is required, and therefore reversed the conviction. *Id.* at 966, 703 P.2d at 730.

Although the precise source of that requirement is not clearly articulated in the *Swan* opinion, we conclude that its holding that a defendant's personal assent to a waiver is necessary was grounded upon Article I, § 7 of the Idaho Constitution. This is evident from the *Swan* court's discussion of *State v. Davis*, 104 Idaho 523, 661 P.2d 308 (1983), where the Idaho Supreme Court concluded that a criminal defendant could waive the jury trial protections of Article I, § 7 in favor of a court trial even though the constitutional provision in effect at the

4

time[2] did not expressly allow a defendant to do so in a felony case. In *Swan*, this Court framed the issue presented as one not decided in *Davis*--how, in consideration of the newly amended Article I, § 7, the right to a jury trial is effectively waived in a felony case. *Swan*, 108 Idaho at 965, 703 P.2d at 929. After considering the importance of the fundamental right to a jury trial as expressed by the United States Supreme Court and authority from other jurisdictions (whether based upon statute, court rule, or state constitution) requiring a defendant's personal waiver, this Court held that a waiver may not be accepted "unless the defendant, after being advised by the court of his right to a trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record." *Id.* at 966, 703 P.2d at 730 (quoting American Bar Association Standards for Criminal Justice, Vol. III, ch. 15, Trial by Jury, § 1.2(b) (1980)). The Court opined that, "a requirement that the court personally address the defendant will not constitute an undue burden on the court where this very important right is at issue."[3]

Here, while the district court obtained Umphenour's agreement to the stipulated facts, it did not discuss with Umphenour his right to trial by jury at which the State would have the burden of proving his guilt, nor did it obtain Umphenour's personal waiver of that right in open court. Umphenour has thus established a clear violation of his right to a jury trial under Article I, § 7 of the Idaho Constitution, satisfying the first two prongs of the *Perry* test for fundamental error. Because we conclude that a defendant's personal waiver is required by the Idaho Constitution, we do not address whether the same requirement is imposed by the Sixth Amendment.

---

[2]    *See State v. Swan*, 108 Idaho 963, 965 n.2, 703 P.2d 727, 729 n.2 (Ct. App. 1985).

[3]    Our holding that a defendant's personal waiver is required under the Idaho Constitution is consistent with the current Idaho Criminal Rules. The year after *Swan* was decided, the Idaho Supreme Court adopted a criminal rule that has remained unchanged for nearly thirty years and sets an even more stringent standard than that expressed in *Swan* for waiver of a jury trial in a felony case. Idaho Criminal Rule 23(a) states:

> In felony cases issues of fact must be tried by a jury, unless a trial by jury is waived by a written waiver executed by the defendant in open court with the consent of the prosecutor expressed in open court and entered in the minutes.

5

**B.      Whether the Error Affected the Defendant's Substantial Rights**

The remaining issue is whether Umphenour has satisfied the third prong.  According to *Perry*, that third element requires that "the defendant . . . demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings."  *Perry*, 150 Idaho at 226, 245 P.3d at 978.

On this appeal, Umphenour makes no argument that the invalid waiver of his right to a jury trial "affected the outcome of the trial proceedings."  That is, he does not assert the record demonstrates that, had the district court asked him personally whether he was waiving his jury trial right, he would have said no or that a jury as the trier of fact would have acquitted.  Instead, Umphenour contends that he is relieved of the burden to show prejudice because a constitutionally invalid waiver of the right to a jury trial is a structural defect that necessitates reversal without a demonstration of actual prejudice.

Umphenour's structural defect argument implicates the "(in most instances)" hedge in the *Perry* opinion's articulation of the prejudice prong of the fundamental error test.  The inclusion of that parenthetical qualification is explained in the *Perry* opinion, where the Idaho Supreme Court fashioned a new fundamental error test for Idaho courts.  In *Perry*, the Idaho Supreme Court relied largely upon the United States Supreme Court's expression in *United States v. Olano*, 507 U.S. 725, 732-35 (1993) of a three-part inquiry to determine when federal appellate courts should reverse on grounds of plain error to which no objection was made in the trial court.  While discussing the third prong of the *Olano* test, the Idaho Supreme Court explained:

> The reason the parenthetical--(in most instances)--was inserted into the third prong above is because the U.S. Supreme Court in *Olano* declined to determine whether unobjected to constitutional violations rising to the level of structural defects will satisfy the "affect substantial rights" prong without a showing of actual affect on the outcome of the case.  *Id.* at 735, 113 S. Ct. at 1778, 123 L. Ed. 2d at 520.  *See also Puckett v. U.S.*, 556 U.S. 129, ____, 129 S. Ct. 1423, 1432, 173 L. Ed. 2d 266, 278 (2009).
>
> . . . .
> The State of Idaho shares the same conflicting interests as the federal government when it comes to review of unobjected to error, and we find that the U.S. Supreme Court struck an appropriate balance between these competing interests in their opinion in *Olano*.

*Perry*, 150 Idaho at 225-26, 245 P.3d at 977-78.  The Idaho Supreme Court then adopted the three-pronged fundamental error test stated above, including the third prong with the "in most

instances" parenthetical.  It is thus apparent that in *Perry*, the Idaho Supreme Court, like the United States Supreme Court in *Olano*, left open the question whether a constitutional violation rising to the level of structural error would satisfy the third prong without a showing of actual effect on the outcome of the trial.  In view of that question, which is as yet unresolved in Idaho law, we must determine whether a trial court's failure to take a valid waiver of a jury trial constitutes structural error and, if so, whether a showing of structural error satisfies the third prong of the *Perry* test.

### 1.      A constitutionally invalid waiver of a jury trial is a structural defect

To answer the first of these inquiries, we again consult the *Perry* opinion.  The Idaho Supreme Court there discussed structural defects as follows:

> In *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the Court elaborated on its statements in *Chapman* that some constitutional rights are so basic to a fair trial that the violation of those rights requires an automatic reversal and is not subject to harmless error analysis.  Chief Justice Rehnquist, writing for the majority on the issue, noted that constitutional error could essentially be broken down to two different categories:  1) trial errors "which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt;" and 2) structural defects which affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself" and thus are so inherently unfair that they are not subject to harmless error analysis.  *Id.* at 307-308, 310, 111 S. Ct. at 1264, 1265, 113 L. Ed. 2d at 329-330.  Explaining why certain constitutional violations amount to structural defects, the U.S. Supreme Court noted that "'[w]ithout these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"  *Id.* at 310, 111 S. Ct. at 1265, 113 L.Ed.2d at 331 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460, 470-71 (1986)).  *See also U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148, 126 S. Ct. 2557, 2564, 165 L. Ed. 2d 409, 419 (2006) ("[Structural defects] 'defy analysis by harmless-error standards' because they 'affect the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" (quoting *Fulminante*, 499 U.S. at 309-10, 111 S. Ct. at 1265, 113 L. Ed. 2d at 330-31)).
>
> The U.S. Supreme Court has found that the following errors constitute structural defects:  (1) complete denial of counsel (*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)); (2) biased trial judge (*Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927)); (3) racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986)); (4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)); (5) denial of a

7

public trial (*Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)); (6) defective reasonable-doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)); and (7) erroneous deprivation of the right to counsel of choice (*U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006)). Although there may be other constitutional violations that would so affect the core of the trial process that they require an automatic reversal, as a general rule, most constitutional violations will be subject to harmless error analysis. *Neder v. U.S.*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35, 46 (1999). ("'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460, 471 (1986) (alterations in the original))).

*Perry*, 150 Idaho at 222-23, 245 P.3d at 974-75.

An invalid waiver of a jury trial is not within the *Perry* list of structural defects theretofore identified by the United States Supreme Court. However, the *Perry* list does not purport to be exclusive. The opinion expressly states that there may be other constitutional violations not yet recognized that would so affect the core of the trial process that they require an automatic reversal. *Id.* at 223, 245 P.3d at 975.

To assess whether an invalid waiver of a jury trial constitutes structural error, we begin with *Fulminante's* instruction that distinguishes between (1) trial errors "which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt," and (2) structural defects which "defy analysis by harmless-error standards'' because they "affect[] the framework within which the trial proceeds" and are not "simply an error in the trial process itself." *Fulminante*, 499 U.S. at 307-10. In a later case, the United States Supreme Court held that an erroneous deprivation of the right to counsel of choice is structural error, resting its determination primarily upon "the difficulty of assessing the effect of the error" under harmless error standards. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006). Applying these standards, a constitutionally invalid waiver of a jury trial appears to fit within the category of structural error. It is not an error in the trial

process but a defect in the framework within which the trial proceeds, and the difficulty of assessing the effect on the trial outcome of an invalid waiver is readily apparent.[4]

We note that in *Swan* this Court treated the invalid waiver of a jury trial as if it were a structural defect. We reversed the defendant's conviction with no discussion of any requirement that the defendant show prejudice (such as by demonstrating that he would not have waived the right if he had been asked), that his court trial was unfair, or that had the case been presented to a jury the result would have been different.[5] The *Swan* Court did not refer to the error as a "structural defect," but that term was not coined by the United States Supreme Court until several years later in *Fulminante*.

The conclusion that a defective jury trial waiver is a structural defect is bolstered by two United States Supreme Court decisions finding structural error where a defendant's right to a jury trial was denied or infringed. In each case, the Court rested its decision on the fundamental importance of the constitutional right to a jury. In *Duncan v. State of Louisiana*, 391 U.S. 145 (1968), the defendant was convicted of simple battery at a court trial. The trial court had denied the defendant's request for a jury trial because the Louisiana Constitution called for jury trials only when capital punishment or imprisonment at hard labor could be imposed. The Supreme Court held that the Sixth Amendment independently guaranteed Duncan the right to a jury trial in state courts on all criminal charges that do not qualify as petty offenses and that Duncan's charge was not a petty offense. In reversing the conviction without requiring a showing of prejudice, the Court acknowledged that it did not believe "that every criminal trial--or any particular trial--held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury," *id.* at 158, but that "our conclusion is that in the

---

[4] It might be said that *in the present case* it is easy to determine that a jury trial would not result in a different outcome because Umphenour stipulated to all of the facts necessary to establish his guilt. In our view, that is not a correct analysis for two reasons. First, to determine whether an invalid waiver of the right to a jury trial is a structural defect, a court should consider the category of defect generically, not with regard to the circumstances of an individual case. Second, it is impossible to know whether Umphenour would have agreed to submit his case on stipulated facts if he had first been asked if he was willing to waive his right to a jury trial where the State would bear the burden to prove his guilt.

[5] *See also State v. Bennion*, 112 Idaho 32, 37, 730 P.2d 952, 957 (1986) (stating "the right to a jury trial is a fundamental right, and must be guarded jealously").

American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants." *Id.* at 157-58. The Supreme Court further emphasized the importance of protecting a criminal defendant's right to a jury trial, stating:

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power--a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States.

*Duncan*, 391 U.S. at 155-56 (footnote omitted).

Also relevant to our inquiry is *Sullivan v. Louisiana*, 508 U.S. 275 (1993), where the Supreme Court considered whether a constitutionally deficient reasonable doubt instruction may be harmless error. The Court held that it could not:

> Another mode of analysis leads to the same conclusion that harmless-error analysis does not apply: In *Fulminante*, we distinguished between, on the one hand, "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," 499 U.S., at 309, 111 S. Ct., at 1265, and, on the other hand, trial errors which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented," *id.*, at 307-308, 111 S. Ct., at 1252, 1264. Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a "basic protectio[n]" whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, *Rose*, *supra*, 478 U.S., at 577, 106 S. Ct., at 3105. The right to trial

10

by jury reflects, we have said, "a profound judgment about the way in which law should be enforced and justice administered." *Duncan v. Louisiana*, 391 U.S., at 155, 88 S. Ct., at 1451. *The deprivation of that right with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."*

*Sullivan*, 508 U.S. at 281-82 (emphasis added).

Most other jurisdictions that have considered the precise issue presented here hold that a defective waiver of the right to a jury trial is reversible error, without a showing of actual prejudice, whether the requirement of a personal waiver derives from state constitutional provisions, from statutes or from court rule.[6] For example, in *Fortune v. United States*, 59 A.3d 949, 956 (D.C. 2013), the trial court failed to obtain Fortune's personal waiver of his right to a jury trial as required by statute before conducting a court trial. The District of Columbia Court of Appeals found that plain error occurred by this failure and concluded:

> While there are strong arguments on both sides of the issue, we are persuaded that the importance of the right to a jury trial, the explicit statutory command in this jurisdiction that trial shall be by jury absent an express waiver by the defendant in open court, and the relative inability of a reviewing court to engage in review of whether the error affected the defendant's rights, all counsel in favor of holding that the failure to make the prescribed determination of waiver is a structural error, one that obviates the need for further inquiry into whether the defendant's substantial rights were affected by the error. We so hold.

*Fortune*, 59 A.3d at 956-57. *See also Jackson v. United States*, 498 A.2d 185 (D.C. 1985) (absent showing that trial court obtained the defendant's personal waiver of his right to jury trial in compliance with procedures contemplated by statute and rule providing right to jury trial, defendant's convictions were *per se* reversible error).

In *State v. Baker*, 170 P.3d 727, 728 (Ariz. Ct. App. 2007), "the trial court confirmed with the prosecutor and defense counsel their desire to submit the matter on a stipulated record" and thereafter found the defendant guilty. Baker appealed, contending that he had never waived his right to a jury trial. The Court of Appeals of Arizona agreed and reversed the conviction on the determination that the error was structural. *Id.* at 731-32.

In *People v. Ernst*, 881 P.2d 298, 299-300 (Cal. 1994), on separate occasions two different defense attorneys waived a jury trial in the defendant's presence. Following his

---

[6]     Other states have their own standards for reviewing errors in criminal cases and do not necessarily require a constitutional violation for structural error to occur.

conviction on a court trial, Ernst appealed, asserting that the judgment should be reversed because he had not personally and expressly waived his right to a trial by jury. The Supreme Court of California held that these proceedings did not comply with a state constitutional requirement that the waiver of a jury be by the consent of both parties "expressed in open court by the defendant and the defendant's counsel." The Court determined that absent a defendant's personal and express waiver, structural error had occurred. *Id.* at 302-03; *accord McGurk v. Stenberg*, 163 F.3d 470 (8th Cir. 1998) (counsel was deficient in failing to inform defendant of right to jury trial and prejudice was presumed because error was structural); *State v. Bakke*, 498 N.W.2d 819, 820 (N.D. Ct. App. 1993) (failure to obtain defendant's personal waiver of right to jury trial is per se reversible error); *State v. Ibey*, 352 A.2d 691, 692 (Vt. 1976) (failure to obtain defendant's personal waiver of right to jury trial is per se reversible error); *People v. Brown*, 327 N.Y.S.2d 820, 820-21 (N.Y. App. Div. 1971) (failure to obtain defendant's personal waiver of right to jury trial by "written instrument" is per se reversible error); *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984) (failure to obtain defendant's personal waiver of right to jury trial is per se reversible error). *But see United States v. Williams*, 559 F.3d 607, 615 (7th Cir. 2009) and *Johnson v. State*, 994 So. 2d 960, 965-66 (Fla. 2008), both holding that such error is not structural.

Like the majority of other courts, we conclude that the failure to obtain a defendant's personal waiver of the right to a jury trial before conducting a court trial is a structural defect.

**2.** **A structural defect satisfies the "affected substantial rights" prejudice prong of the fundamental error test**

Having concluded that the failure to obtain a defendant's personal waiver of the right to a jury trial is a structural defect, we must next determine whether demonstration of a structural defect satisfies the "affect substantial rights" prejudice prong of the *Perry* test for structural error. The *Perry* opinion, like the United States Supreme Court's *Olano* analysis, does not resolve whether a structural error satisfies this third prong without the need for a showing that the error affected the outcome of the trial proceedings.

We conclude that a showing of structural error does satisfy the *Perry* fundamental error standard without demonstration of actual prejudice. We reach this conclusion because one of the characteristics of structural defects as described by the United States Supreme Court is that they "defy analysis by harmless-error standards." *Fulminante*, 499 U.S. at 309-10. The Supreme Court has said that deprivation of the right to trial by a jury properly instructed on the reasonable

12

doubt standard has "consequences that are necessarily unquantifiable and indeterminate." *Sullivan*, 508 U.S. at 282. In holding that the deprivation of the right to counsel of one's choice constitutes structural error, the Court stated that "we rest our conclusion of structural error upon the difficulty of assessing the effect of the error." *Gonzales-Lopez*, 548 U.S. at 149 n.4. Indeed, the Court referred to "the irrelevance of harmlessness" in determining whether a constitutional defect was structural. *Id.* Thus, a structural defect is typically a type of error for which the effect on the defendant's trial outcome cannot be demonstrated.

The Idaho Supreme Court has seen fit to adopt a fundamental error doctrine that allows appellate review of clear constitutional errors even though the claim of error was not preserved by objection below. Under the *Perry* formula, where the error is of such a nature that its probable effect on the outcome of the proceedings can be evaluated, the appellant bears the burden to show prejudice, but that burden would be inherently impossible for an appellant to meet in most cases of structural error. It would seem inconsistent with the fundamental error doctrine as articulated in *Perry* to hold that appellate relief is *not* available because the effect on the proceedings is "necessarily unquantifiable and indeterminate," *Sullivan*, 508 U.S. at 282, where the defect is a deprivation of one of the most fundamental constitutional safeguards of fair trial proceedings such as the right to counsel, the right to a jury trial, the right to an unbiased judge, or the right to a jury selected without racial discrimination. Accordingly, we conclude that a structural defect satisfies the *Perry* prejudice prong without a showing of a probable actual effect on the outcome of the case.

## III.

## CONCLUSION

Umphenour has shown that fundamental error occurred when the district court conducted a court trial without first obtaining Umphenour's personal, express waiver of his right to a jury trial. Therefore, the judgment of conviction is vacated and this case is remanded to the district court for proceedings consistent with this opinion.

Chief Judge MELANSON and Judge GRATTON **CONCUR.**

13